UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ALLAN J. MAY,

                                        Plaintiff,

                    -vs-                                        05-CV-319C

JO ANNE B. BARNHART,
Commissioner of Social Security,

                                        Defendant.

_____
_____

        Plaintiff Allan J. May initiated this action pursuant to 42 U.S.C. §405(g) to review the

final determination of the Commissioner of Social Security ("Commissioner") denying his

application for Social Security disability ("SSDI") benefits.  The Commissioner has filed a

motion for judgment on the pleadings, and the plaintiff has cross-moved for the same relief

pursuant to Fed.R.Civ.P 12(c).  For the following reasons, the Commissioner's motion is

granted, and plaintiff's cross-motion is denied.


                                **BACKGROUND**

        Plaintiff was born on December 16, 1950 (T. 53).[1]  He applied for SSDI benefits on

November 21, 2002, with an alleged disability onset date of October 18, 2002 (T. 53).  He

alleges disability based on degenerative joint disease, a history of Perthe's disease

(shortness of one limb), and has undergone a total hip replacement (T. 23).  Plaintiff's

application was denied on January 24, 2003 (T. 31).  Plaintiff requested an administrative

hearing, which was held on April 13,  2004 before Administrative Law Judge ("ALJ")

_____

        [1]  References preceded by "T." are to page numbers of the transcript of the administrative record
filed by defendant as part of the answer to the complaint (Item 6).

Donald M. Graffius (T. 150-73).  On May 12, 2004, the ALJ determined that plaintiff was

not disabled and not entitled to SSDI benefits (T. 19-24).

The ALJ's decision became the Commissioner's final determination on April 14,

2005 when the Appeals Council declined plaintiff's request for review (T. 4-7).  On May 5,

2005, plaintiff instituted this action seeking judicial review of the Commissioner's final

determination (Item 1).  The Commissioner filed an answer on July 19, 2005 (Item 4).  Both

parties cross-moved for judgment on the pleadings on December 1, 2005 (Items 6, 7).

## DISCUSSION

### I.    Scope of Judicial Review

Under the Social Security Act, a person is entitled to Social Security disability

benefits when he or she is unable "to engage in any substantial gainful activity by reason

of any medically determinable physical or mental impairment which can be expected to

result in death or which has lasted or can be expected to last for a continuous period of not

less than 12  months . . . ."  42 U.S.C. § 423(d)(1)(A); *Melville v. Apfel*, 198 F.3d 45, 50 (2d

Cir. 1999).  Such a "physical or mental impairment" must be demonstrable by medically

acceptable clinical and laboratory diagnostic techniques.   42  U.S.C.  §  423(d)(3).

Determinations of disability are based on objective medical facts, diagnoses, or medical

opinions inferable from these facts, subjective complaints of pain or disability, and

educational background, age, and work experience.  *Mongeur v. Heckler*, 722 F.2d 1033,

1037 (2d Cir. 1983); *Fishburn v. Sullivan*, 802 F. Supp. 1018, 1023 (S.D.N.Y. 1992).

The Act states that upon district court review of the Commissioner's decision, "[t]he

findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall

be conclusive . . . ." 42 U.S.C. §405(g).  Substantial evidence is defined as evidence which

"a reasonable mind might accept as adequate to support a conclusion."  *Richardson v.*

*Perales,* 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S.

197, 229 (1938)); *see also Tejada v. Apfel,* 167 F.3d 770, 773-74 (2d Cir.  1999).  Under

these standards, the scope of judicial review of the Commissioner's decision is limited, and

the reviewing court may neither try the case *de novo* nor substitute its findings for those

of the Commissioner.  *Richardson,* 402 U.S. at 401.  "The court's sole inquiry is 'whether

the record, read as a whole, yields such evidence as would allow a reasonable mind to

accept the conclusions reached' by the Commissioner."  *Winkelsas v. Apfel,* 2000 WL

575513, at *2 (W.D.N.Y. February 14, 2000) (quoting *Sample v. Schweiker,* 694 F.2d 639,

642 (2d Cir. 1982).

However, "[b]efore the insulation of the substantial evidence test comes into play,

it must first be determined that the facts of a particular case have been evaluated in light

of correct legal standards."  *Gartmann v. Sec'y of Health and Human Servs.,* 633 F. Supp.

671, 680 (E.D.N.Y. 1986) (quoting *Klofta v. Mathews,* 418 F. Supp. 1139, 1141 (E.D.Wis.

1976).  The Commissioner's determination cannot be upheld when it is based on an

erroneous view of the law that improperly disregards highly probative evidence.  *Tejada,*

167 F.3d at 773.

## II.        Standards for Determining Eligibility for Disability Benefits

The regulations set forth a five-step process for the ALJ to follow in evaluating

disability claims.  *See* 20 C.F.R. §404.1520.  First the ALJ must determine whether the

claimant is presently engaged in substantial gainful activity.  If the claimant is not, the ALJ

must decide if the claimant has a "severe" impairment, which is an impairment or combination of impairments that "significantly limits [the claimant's] physical or mental ability to do basic work activities . . . ."  20 C.F.R. § 404.1520(c).   If the claimant's impairment is severe, the ALJ then determines whether it meets or equals the criteria of an impairment found in 20 C.F.R. § 404, Subpart P, Appendix 1 (the "Listings").   If the impairment meets or equals a listed impairment, the claimant will be found to be disabled. If the claimant does not have a listed impairment, the fourth step requires the ALJ to determine if, notwithstanding the impairment, the claimant is capable of performing his or her past relevant work.   Finally, if the claimant is not capable of performing the past relevant work, the fifth step requires that the ALJ determine whether the claimant is capable of performing other work which exists in the national economy, considering the claimant's age, education, past work experience, and residual functional capacity ("RFC"), based on a series of charts provided in the regulations at 20 C.F.R. § 404. Subpart P, Appendix 2 (the "Grids").   *See Curry v. Apfel,* 209 F.3d 117, 122 (2d Cir. 2000); *Reyes v. Massanari,* 2002 WL 856459, at *3 (S.D.N.Y. April 2, 2002).

The claimant bears the burden of proof with respect to the first four steps of the analysis.  If the claimant demonstrates an inability to perform past work, the burden shifts to the Commissioner to show that there exists other work that the claimant can perform. *See Rosa v. Callahan,* 168 F.3d 72, 77 (2d Cir. 1999).

In this case, the ALJ determined that plaintiff had not engaged in substantial gainful employment activity since the date of the alleged disability onset, October 18, 2002 (T. 20). In reviewing plaintiff's medical records, the ALJ found that plaintiff suffers from a medically determinable condition that significantly limits his ability to perform basic work activity and

4

thus suffers from a "severe" impairment for purposes of the regulations (T. 20).  The ALJ

further concluded, however, that plaintiff's impairments, individually or in combination, did

not meet or equal the requirements of the Listings (T. 20).  Proceeding to the fourth step

of the sequential evaluation process, based on the medical record and plaintiff's subjective

complaints, the ALJ found that plaintiff's previous work as a grounds maintenance worker

was semi-skilled work requiring medium exertion (T. 22).  Thus, the ALJ found that plaintiff

could not perform past relevant work (T. 22).  The ALJ further found that plaintiff has the

RFC to perform a limited range of light work (T. 22).  Relying on the testimony of a

vocational expert ("VE"), the ALJ found that plaintiff could perform various jobs in the local

economy, including information clerk, locker room attendant, storage facility rental clerk,

photostat operator helper, and photo machine operator (T. 23).  The VE also testified, and

the ALJ found, that plaintiff has no transferable job skills (T. 22).  Accordingly, the ALJ

concluded that plaintiff was not disabled for purposes of the Social Security Act at any time

since the alleged onset of his disability (T. 23).

The Commissioner contends that the ALJ's findings are supported by substantial

evidence.  Plaintiff contends that the ALJ misapplied the established legal and regulatory

standards in finding that plaintiff could perform a wide range of light work. He argues that

his lack of transferable skills and ability to perform only a few jobs in the light exertional

range should dictate a finding of disability.  Additionally, plaintiff argues that the ALJ  failed

to consider plaintiff's subjective complaints of pain and limitations.

### III.   The Medical Evidence

In September 2002, plaintiff was seen by Dr. Joseph P. Falcone.  He complained of hip pain of severe intensity which limited his activities of daily life.  Plaintiff also had a history of Perthe's disease as a child, which resulted in a discrepancy of approximately 2 ½ inches in his left leg (T. 97).  Plaintiff's range of motion in his left leg was restricted, and he walked with a limp.  X-rays showed severe degenerative arthritis of the left hip.  At that time, Dr. Falcone recommended total hip replacement surgery (T. 97).

The hip replacement surgery was performed on November 1, 2002 (T. 100).  On December 5, 2002, plaintiff's incision was well healed, and the implant was well seated. He was advised to do gluteal and range of motion exercises with lower back strengthening (T. 104).   On February 20, 2003, it was noted that plaintiff still had quadricep and gluteal weakness (T. 103).  Dr. Falcone advised him to use a cane for stability and prohibited heavy lifting (T. 101).  Dr. Falcone opined that plaintiff was totally disabled and "unable to perform any work duty in the near future."  *Id.*

On November 3, 2003, plaintiff saw Dr. Falcone complaining of knee pain (T. 142).  Dr. Falcone found that plaintiff's left hip was "doing fine."  Plaintiff was not using his cane and his quadricep strength was "fairly good." *Id.*  An x-ray of plaintiff's left knee showed mild degenerative arthritic changes of the left knee (T. 143).

In May 2004, plaintiff complained of lower back pain (T. 149).  X-rays showed no fracture or dislocation, and conservative treatment with moist heat, anti-inflammatory medication, and stretching exercises was recommended (T. 149).  In August 2004, plaintiff still complained of low back pain.  Dr. Falcone attributed it to gluteal and quadricep

weakness from the hip surgery.  Plaintiff was given some exercises to perform at home.

Dr. Falcone also stated that plaintiff could not sit or stand for prolonged periods.  *Id.*

On October 4, 2004, plaintiff was seen for a routine check-up for his hip (T. 147).

His mobility was improved and he was "doing well."  He was able to reach to his knees, and

extend his leg to about 10 degrees with full rotation.  *Id.*

## IV.     Other Evidence

At the hearing, plaintiff testified that he completed the twelfth grade (T. 156).  He

retired from his position as a grounds maintenance worker at a hospital on October 17,

2002 (T. 158).  He did not retire due to his alleged disability, but it was a "forced

retirement." (T. 157).  Plaintiff stated that he takes pain medication (T. 159).  He does not

work and does very little at home (T. 160).  He cooks, washes dishes, watches television,

and attends social functions (T. 160-62).

Plaintiff stated that his doctor has advised him to bend only to 90 degrees (T. 163).

He also stated that he must sit with his leg straight (T. 166).  He can stand for about fifteen

minutes and walk about one block (T. 164).  Plaintiff also stated that he can sit for about

25 minutes (T. 168).

Eugene Czuzcman, a vocational expert, testified that plaintiff's previous job as a

grounds maintenance worker was a semi-skilled medium exertion position (T. 169).

Assuming a person of plaintiff's age, education, and work experience, with limitations on

walking and standing of two hours per day and restrictions on bending, crouching, and

stooping, pushing and pulling with the lower extremities, and with the option of sitting and

standing during the workday, Mr. Czuzcman stated that such a person could perform

several jobs in the local economy, including information clerk, locker room attendant, storage facility rental clerk, photostat operator helper, and photo machine operator (T. 170).

## V.    Plaintiff's Allegations of Pain and Limitations

Plaintiff contends that the ALJ  did not comply with Social Security Ruling 96-7P in that he "did not articulate his findings as to the claimant's credibility as clearly required" by the ruling.  Item 6, p. 8.  The ALJ concluded that "the evidence does not fully substantiate the claimant's allegations as to the incidence, duration, and severity of his complaints." (T. 21).

In evaluating subjective allegations, the ALJ must assess whether medical evidence shows "the existence of a medical impairment . . . which could reasonably be expected to produce the pain or other symptoms alleged . . . ."  42 U.S.C. § 423(d)(5)(A).  If there is "conflicting evidence about a [plaintiff's] pain, the ALJ must make credibility findings."  *Snell v. Apfel*, 177 F.3d 128, 135 (2d Cir. 1999).  When the alleged symptoms suggest greater severity of impairment than the objective medical evidence alone, the ALJ considers all the evidence submitted, and considers "the extent to which there are any conflicts between your statements and the rest of the evidence . . . ."  20 C.F.R. § 404.1529(c)(4).  The ALJ will also consider other factors, such as daily activities; the location, duration, frequency, and intensity of symptoms; the type, effectiveness, and side effects of medication; and other treatment or measures to relieve those symptoms.  *See* 20 C.F.R. § 404.1529(c)(3); SSR 96-7P, 1996 WL 374186 (July 2, 1996).  "The reasons for the credibility finding must

be grounded in the evidence and articulated in the determination or decision." SSR 96-7P, at *4. Therefore,

> [a]n [ALJ] may properly reject [subjective complaints] after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must [do so explicitly and] set forth his or her reasons with sufficient specificity to enable [the courts] to decide whether the determination is supported by substantial evidence.

Lewis v. Apfel, 62 F. Supp. 2d 648, 651 (N.D.N.Y.1999) (internal quotation marks, citation omitted); see Brandon v. Bowen, 666 F. Supp. 604, 608 (S.D.N.Y.1987).

The ALJ noted that while plaintiff complained at the hearing that his medications resulted in nervousness and a rash, he made no such complaints to medical providers (T. 21). The ALJ stated that the record does not support plaintiff's allegations that his ability to stand and walk are as limited as alleged. The ALJ noted that plaintiff drove himself to the hearing, is able to cook and do some housework, and attends church and social gatherings (T. 21). Plaintiff walked with only a slight limp, did not use a cane, and did not appear to be in pain at the hearing (T. 21). The ALJ also noted that plaintiff's alleged disability did not cause him to stop working (T. 21). The ALJ stated that while the medical evidence provides an objective basis for the allegations of some hip and knee pain, "when considered as a whole, the evidence does not fully substantiate the claimant's allegations as to the incidence, duration, and severity of his complaints." (T. 21). When the ALJ asked him why he is unable to work, plaintiff stated that he is "on total hip precautions. . . . Any sudden movement unconsciously in the wrong direction, I could pop my hip out and then I would have problems." (T. 160.)

Here, the ALJ fully comported with the regulations and the Social Security Ruling regarding plaintiff's credibility. The ALJ cited to the medical evidence that indicated that

plaintiff's hip was "doing fine" and that he had "fairly good" quadricep strength (T. 142).

There was no medical evidence to support plaintiff's claims that he must sit with his leg

extended (T. 21).  The ALJ also noted that plaintiff did not appear to be in pain at the

hearing and was able to drive, shop, cook, do housework, and participate in social

activities.  The ALJ clearly articulated his findings, and committed no error with respect to

plaintiff's allegations of pain and limitations.

## VIII.   Plaintiff's Residual Functional Capacity

Plaintiff contends that the ALJ erred in finding that plaintiff was able to perform only

a slightly limited range of light work.   Plaintiff contends that his RFC falls between

sedentary and light exertional levels directing opposite conclusions under the Grids.  As

the VE identified only five positions in the national economy, plaintiff argues he cannot

perform a wide range of light work jobs and thus should be found disabled.

Plaintiff cites Social Security Ruling 83-12 , 1983 WL 31253 (1983) in support of this

argument.  In relevant part, SSR 83-12 provides:

> 2. If the exertional level falls between two rules which direct opposite
> conclusions, *i.e.*, "Not disabled" at the higher exertional level and "Disabled"
> at the lower exertional level, consider as follows:
> a. An exertional capacity that is only slightly reduced in terms of the
> regulatory criteria could indicate a sufficient remaining occupational base to
> satisfy the minimal requirements for a finding of "Not disabled."
> b. On the other hand, if the exertional capability is significantly reduced in
> terms of the regulatory definition, it could indicate little more than the
> occupational base for the lower rule and could justify a finding of "Disabled."
> c. In situations where the rules would direct different conclusions, and the
> individual's exertional limitations are somewhere "in the middle" in terms of
> the regulatory criteria for exertional ranges of work, more difficult judgments
> are involved as to the sufficiency of the remaining occupational base to
> support a conclusion as to disability. Accordingly, [VE] assistance is
> advisable for these types of cases.

SSR 83-12, at *2-3.

Plaintiff falls between two rules in the Grids.  He is an individual closely approaching advanced age with a high school education and no transferable skills.  If he can do only sedentary work, Rule 201.14 would dictate a finding of disability.  If he can do light work, Rule 202.14 would dictate a finding of no disability.  Here, the ALJ found that plaintiff can do light work with certain limitations, including an inability to stand or walk for more than two hours of an eight-hour workday, and restrictions on balancing, stooping, kneeling, crouching, crawling, climbing, and pushing and pulling with the lower extremities (T. 22-3).  As he could not rely on either Rule, the ALJ took testimony from a VE, as is advised in SSR 83-12.  The VE identified over 400,000 such jobs in the national economy, including locker room attendant, storage facility rental clerk, photostat operator helper, and photo machine operator.  Plaintiff states that this number of jobs indicates that he is not able to perform a wide range of jobs in the light work category, and so he should be found disabled.

SSR 83-12 does not require the ALJ to determine whether a claimant's occupational base is more closely related to light or sedentary work capacity. Similarly, the Ruling cannot be interpreted to suggest that a finding of inability to do the full range of light work requires a conclusion that a person is capable only of sedentary work. *See Gravel v. Barnhart*, 360 F. Supp. 2d 442, 448 (N.D.N.Y. 2005).  The SSR merely provides guidance to the ALJ on how to proceed. *See Gravel v. Barnhart*, 360 F. Supp. 2d at 448; *Hall v. Barnhart*, 2004 WL 632723, at *5 (E.D.Pa. Jan. 14, 2004).  When an individual's RFC is between two categories, "the occupational base is affected and may or may not represent a significant number of jobs in terms of the rules directing a conclusion as to disability."

11

SSR 83-12, at *1.  Moreover, SSR 83-12 instructs the ALJ to "consider the extent of any erosion of the occupational base and a[ss]ess its significance," and, in complex cases "[w]here the extent of the erosion of the occupational base is not clear. . .  to consult a vocational [expert]."  SSR 83-12, at *2.  The Ruling further provides that the VE can assess the effect of any limitation on a given range of work and then "advise whether the impaired person's RFC permits him or her to perform substantial numbers of occupations within the range of work at issue; identify jobs which are within the RFC, if they exist; and provide a statement of the incidence of such jobs in the region in which the person lives or in several regions of the country."  SSR 83-12, at *3.  Thus, a fair reading of SSR 83-12 indicates that an ALJ can properly find a claimant capable of performing a limited range of work in a given exertional category and then elicit VE testimony to determine whether that claimant is disabled.  *Gravel v. Barnhart,* 360 F. Supp. 2d at 448.  Given the fact that plaintiff's RFC fell between the two exertional levels, it was not proper to rely on the Grids.  Here, the ALJ did exactly as was required by SSR 83-12 in relying on the VE to determine whether plaintiff could perform a significant number of jobs in the national economy.

To the extent that plaintiff argues that the VE did not identify a significant number of jobs in the local or national economy, this argument is without merit.  The VE identified approximately 2,200 positions in the local economy and approximately 412,000 in the national economy (T. 23, 170-71).  This represents a significant number of available jobs in the local and national economies and would indicate that plaintiff is capable of performing a significant range of light work.  *See Peguero v. Barnhart*, 2006 WL 2570607, at *6 (S.D.N.Y. September 06, 2006) (500 jobs in a local economy is "significant" and defeats a finding of disability); *see also Jenkins v. Bowen*, 861 F.2d 1083, 1087 (8th Cir.

1988) (500 jobs significant); *Craigie v. Bowen*, 835 F.2d 56, 58 (3d Cir. 1987) (200 regional

jobs); *Allen v. Bowen*, 816 F.2d 600, 602 (11th Cir. 1987) (174 local jobs).  Accordingly, the

ALJ's determination, that plaintiff is capable of performing a significant number of light work

jobs in the economy and is therefore not disabled, is supported by substantial evidence.

## CONCLUSION

For the foregoing reasons, the Commissioner's motion for judgment on the

pleadings (Item 7) is granted, and plaintiff's cross-motion (Item 6) is denied.  The Clerk of

the Court is directed to enter judgment in favor of the defendant.

So ordered.

                                          \s\ John T. Curtin
                                          JOHN T. CURTIN
                                          United States District Judge

Dated: January 9    , 2007
p:\opinions\05-319.dec2106